# UNITED STATES *v.* VONN

No. 00-973.   Argued November 6, 2001—Decided March 4, 2002

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the briefs were *Solicitor General Olson, Acting Solicitor General Underwood, Acting Assistant Attorney General Keeney, Paul R. Q. Wolfson,* and *Joel M. Gershowitz.*

*Monica Knox* argued the cause for respondent. With her on the brief was *Maria E. Stratton.**

JUSTICE SOUTER delivered the opinion of the Court.

The Government avoids reversal of a criminal conviction by showing that trial error, albeit raised by a timely objection, affected no substantial right of the defendant and was thus harmless. Fed. Rule Crim. Proc. 52(a). A defendant who failed to object to trial error may nonetheless obtain reversal of a conviction by carrying the converse burden, showing among other things that plain error did affect his substantial rights. Fed. Rule Crim. Proc. 52(b).

Rule 11(h) of the Federal Rules of Criminal Procedure is a separate harmless-error rule applying only to errors committed under Rule 11, the rule meant to ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea. Like Rule 52(a), it provides that a failure to comply with Rule 11 that "does not affect substantial rights shall be disregarded." Rule 11(h) does not include a plain-error provision comparable to Rule 52(b).

The first question here is whether a defendant who lets Rule 11 error pass without objection in the trial court must carry the burdens of Rule 52(b) or whether even the silent defendant can put the Government to the burden of proving the Rule 11 error harmless.[1] The second question is

---

*Saul M. Pilchen* and *David M. Porter* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging affirmance.

[1] This question is rightly before us even though the Government did not urge the Court of Appeals to adopt a plain-error standard. As the Court of Appeals recognized, 224 F. 3d 1152, 1155 (CA9 2000), this position was squarely barred by Circuit precedent holding that any Rule 11 error is subject to harmless-error review. *United States* v. *Odedo,* 154 F. 3d 937, 940 (CA9 1998). Although the Government did not challenge *Odedo* as controlling precedent, we have previously held that such a claim is preserved if made by the current litigant in "the recent proceeding upon

whether a court reviewing Rule 11 error under either standard is limited to examining the record of the colloquy between court and defendant when the guilty plea was entered, or may look to the entire record begun at the defendant's first appearance in the matter leading to his eventual plea.

We hold that a silent defendant has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights.

## I

On February 28, 1997, respondent Alphonso Vonn was charged with armed bank robbery, under 18 U. S. C. §§ 2113(a) and (d), and using and carrying a firearm during and in relation to a crime of violence, under 18 U. S. C. § 924(c). Vonn appeared that day before a Magistrate Judge, who advised him of his constitutional rights, including "the right to retain and to be represented by an attorney of [his] own choosing at each and every sta[g]e of the proceedings." App. 15. Vonn said that he had heard and understood his rights, and the judge appointed counsel to represent him.

On March 17, 1997, three days after being indicted, Vonn, along with his appointed counsel, appeared in court for his arraignment. Again, the Magistrate Judge told Vonn about his rights, including the right to counsel at all stages of the proceedings. Vonn's counsel gave the court a form entitled "Statement of Defendant's Constitutional Rights," on which

---

which the lower courts relied for their resolution of the issue, and [the litigant] did not concede in the current case the correctness of that precedent." *United States* v. *Williams,* 504 U. S. 36, 44–45 (1992). Although there evidently was some confusion as to the Government's precise position in *Odedo,* presumably because the Government argued there, as here, that failure to raise a Rule 11 objection constitutes "waiver," the Court of Appeals understood the Government to contend that "forfeited error" is subject to plain-error review. That, coupled with the fact that the Government did not concede below that *Odedo* was correctly decided, is enough for us to take up this question.

Vonn said he understood his rights, including the right to counsel. His counsel signed a separate statement that he was satisfied that Vonn had read and understood the statement of his rights. The Clerk of Court then asked Vonn whether he had heard and understood the court's explanation of his rights, and whether he had read and signed the statement, and Vonn said yes to each question.

On May 12, 1997, Vonn came before the court and indicated that he would plead guilty to armed bank robbery but would go to trial on the firearm charge. The court then addressed him and, up to a point, followed Rule 11(c)(3) of the Federal Rules of Criminal Procedure. The judge advised Vonn of the constitutional rights he would relinquish by pleading guilty, but skipped the required advice that if Vonn were tried he would have "the right to the assistance of counsel."

Several months later, the stakes went up when the grand jury returned a superseding indictment, charging Vonn under an additional count of conspiracy to commit bank robbery. Although he first pleaded not guilty to this charge as well as the firearm count, at a hearing on September 3, 1997, Vonn said he intended to change both pleas to guilty. Again, the court advised Vonn of rights waived by guilty pleas, but failed to mention the right to counsel if he went to trial. This time, the prosecutor tried to draw the court's attention to its error, saying that she did not "remember hearing the Court inform the defendant of his right to assistance of counsel." *Id.*, at 61. The court, however, may have mistaken the remark as going to Rule 11(c)(2), and answered simply that Vonn was represented by counsel.[2]

Eight months later, Vonn moved to withdraw his guilty plea on the firearm charge. He did not, however, cite Rule 11 error but instead based his request on his own mistake

---

[2] Rule 11(c)(2) provides that "if the defendant is not represented by an attorney," the court must inform the defendant that he "has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent [him]."

about facts relevant to the charge. The court denied this motion, and on June 22, 1998, sentenced Vonn to 97 months in prison.

On appeal, Vonn sought to set aside not only the firearm conviction but the other two as well, for the first time making an issue of the District Judge's failure to advise him of his right to counsel at trial, as required by the Rule. The Court of Appeals agreed there had been error, and held that Vonn's failure to object before the District Court to its Rule 11 omission was of no import, since Rule 11(h) "supersedes the normal waiver rule," and subjects all Rule 11 violations to harmless-error review, 224 F. 3d 1152, 1155 (CA9 2000) (citing *United States* v. *Odedo*, 154 F. 3d 937 (CA9 1998)). The consequence was to put the Government to the burden of showing no effect on substantial rights.[3] The court declined to "go beyond the plea proceeding in considering whether the defendant was aware of his rights," and did not accept the record of Vonn's plea colloquies as evidence that Vonn was aware of his continuing right to counsel at trial. 224 F. 3d, at 1155. It held the Government had failed to shoulder its burden to show the error harmless and vacated Vonn's convictions.

We granted certiorari, 531 U. S. 1189 (2001), to resolve conflicts among the Circuits on the legitimacy of (1) placing the burden of plain error on a defendant appealing on the basis of Rule 11 error raised for the first time on appeal,[4] and (2) looking beyond the plea colloquy to other parts of the

---

[3] As already noted, n. 1, *supra,* the Government in this case did not specifically argue that the plain-error rule, Rule 52(b), governs this case; that was its position in *Odedo*, 154 F. 3d, at 939, on which the Court of Appeals relied for authority here. Hence, the Court of Appeals in this case went no further than to reject the Government's waiver argument.

[4] Compare, *e. g.*, 224 F. 3d, at 1155 (case below); *United States* v. *Lyons,* 53 F. 3d 1321, 1322, n. 1 (CADC 1995), with *United States* v. *Gandia-Maysonet,* 227 F. 3d 1, 5–6 (CA1 2000); *United States* v. *Bashara,* 27 F. 3d 1174, 1178 (CA6 1994); *United States* v. *Cross,* 57 F. 3d 588, 590 (CA7 1995); and *United States* v. *Quinones,* 97 F. 3d 473, 475 (CA11 1996).

official record to see whether a defendant's substantial rights were affected by a deviation from Rule 11.[5]  We think the Court of Appeals was mistaken on each issue, and vacate and remand.

## II

Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant.  The Rule has evolved over the course of 30 years from general scheme to detailed plan, which now includes a provision for dealing with a slip-up by the judge in applying the Rule itself.  Subsection (h) reads that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The language comes close to tracking the text of Rule 52(a), providing generally for "harmless-error" review, that is, consideration of error raised by a defendant's timely objection, but subject to an opportunity on the Government's part to carry the burden of showing that any error was harmless, as having no effect on the defendant's substantial rights.  See Fed. Rule Crim. Proc. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *United States* v. *Olano*, 507 U. S. 725, 734 (1993).

Rule 52(a), however, has a companion in Rule 52(b), a "plain-error" rule covering issues not raised before the district court in a timely way: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  When an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on

---

[5] Compare, *e. g.,* 224 F. 3d, at 1155, with *United States* v. *Parkins,* 25 F. 3d 114, 118 (CA2 1994); *United States* v. *Johnson,* 1 F. 3d 296, 302 (CA5 1993); *United States* v. *Lovett,* 844 F. 2d 487, 492 (CA7 1988); *United States* v. *Jones,* 143 F. 3d 1417, 1420 (CA11 1998); and *Lyons, supra,* at 1322–1323.

a defendant's rights: the defendant who sat silent at trial has the burden to show that his "substantial rights" were affected. *Id.*, at 734–735. And because relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*, at 736 (quoting *United States* v. *Atkinson,* 297 U. S. 157, 160 (1936)).

The question here is whether Congress's importation of the harmless-error standard into Rule 11(h) without its companion plain-error rule was meant to eliminate a silent defendant's burdens under the Rule 52(b) plain-error review, and instead give him a right to subject the Government to the burden of demonstrating harmlessness. If the answer is yes, a defendant loses nothing by failing to object to obvious Rule 11 error when it occurs. We think the answer is no.

### A

Vonn's most obvious recourse is to argue from the text itself: Rule 11(h) unequivocally provides that a trial judge's "variance" from the letter of the Rule 11 scheme shall be disregarded if it does not affect substantial rights, the classic shorthand formulation of the harmless-error standard. It includes no exception for nonobjecting defendants.

Despite this unqualified simplicity, however, Vonn does not argue that Rule 11 error must always be reviewed on the 11(h) standard, with its burden on the Government to show an error harmless. Even though Rule 11(h) makes no distinction between direct and collateral review, Vonn does not claim even that the variant of harmless-error review applicable on collateral attack, see *Brecht* v. *Abrahamson,* 507 U. S. 619, 638 (1993), would apply when evaluating Rule 11 error on habeas review. Rather, he concedes that the adoption of 11(h) had no effect on the stringent standard for collateral review of Rule 11 error under 28 U. S. C. § 2255 (1994 ed.), as established by our holding in *United States* v. *Timmreck,*

441 U. S. 780 (1979), that a defendant cannot overturn a guilty plea on collateral review absent a showing that the Rule 11 proceeding was "'inconsistent with the rudimentary demands of fair procedure'" or constituted a "'complete miscarriage of justice,'" *id.,* at 783 (quoting *Hill* v. *United States,* 368 U. S. 424, 428 (1962)). The concession is prudent, for the Advisory Committee Notes explaining the adoption of Rule 11(h) speak to a clear intent to leave *Timmreck* undisturbed,[6] and there is no question of *Timmreck*'s validity in the aftermath of the 1983 amendments.

Whatever may be the significance of the text of Rule 11(h) for our issue, then, it cannot be as simple as the face of the provision itself. Indeed, the closest Vonn gets to a persuasive argument that Rule 11 excuses a silent defendant from the burdens of plain-error review is his invocation of the common interpretive canon for dealing with a salient omission from statutory text. He claims that the specification of harmless-error review in 11(h) shows an intent to exclude the standard with which harmless error is paired in Rule 52, the plain-error standard with its burdens on silent defendants. The congressional choice to express the one standard of review without its customary companion does not, however, speak with any clarity in Vonn's favor.

---

[6] In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed. See *Beech Aircraft Corp.* v. *Rainey,* 488 U. S. 153, 165–166, n. 9 (1988) (where "Congress did not amend the Advisory Committee's draft in any way . . . the Committee's commentary is particularly relevant in determining the meaning of the document Congress enacted"). Although the Notes are the product of the Advisory Committee, and not Congress, they are transmitted to Congress before the rule is enacted into law. See Amendments to Rules of Criminal Procedure, H. R. Doc. No. 98–55 (1983) (submitting to Congress amendments to the Federal Rules of Criminal Procedure, including the addition of Rule 11(h), accompanied by the report of the Judicial Conference containing the Advisory Committee Notes to the amendment).

At best, as we have said before, the canon that expressing one item of a commonly associated group or series excludes another left unmentioned is only a guide, whose fallibility can be shown by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion of its common relatives. See *Pauley* v. *BethEnergy Mines, Inc.,* 501 U. S. 680, 703 (1991); cf. *Burns* v. *United States,* 501 U. S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent"). Here, the plausibility of an expression-exclusion reading of Rule 11(h) is subject to one strike without even considering what such a reading would mean in practice, or examining the circumstances of adopting 11(h). For here the harmless- and plain-error alternatives are associated together in the formally enacted Rule 52, having apparently equal dignity with Rule 11(h), and applying by its terms to error in the application of any other Rule of criminal procedure. To hold that the terms of Rule 11(h) imply that the latter half of Rule 52 has no application to Rule 11 errors would consequently amount to finding a partial repeal of Rule 52(b) by implication, a result sufficiently disfavored, *Ruckelshaus* v. *Monsanto Co.,* 467 U. S. 986, 1017 (1984), as to require strong support.

Support, however, is not readily found. In the first place, even if we indulge Vonn with the assumption that Congress meant to imply something by failing to pair a plain-error provision with the harmless-error statement in Rule 11(h), just what it would have meant is subject to argument. Vonn thinks the implication is that defendants who let Rule 11 error pass without objection are relieved of the burden on silent defendants generally under the plain-error rule, to show the error plain, prejudicial, and disreputable to the judicial system. But, of course, this is not the only "implication" consistent with Congress's choice to say nothing about Rule 11 plain error. It would be equally possible, as a mat-

ter of logic, to argue that if Rule 52(b) were implicitly made inapplicable to Rule 11 errors, a defendant who failed to object to Rule 11 errors would have no right of review on direct appeal whatever. A defendant's right to review of error he let pass in silence depends upon the plain-error rule; no plain-error rule, no direct review. Vonn has, then, merely selected one possible interpretation of the supposedly intentional omission of a Rule 52(b) counterpart, even though logic would equally allow another one, not to Vonn's liking.

### B

Recognition of the equivocal character of any claimed implication of speaking solely in terms of harmless error forces Vonn to look beyond the text in hope of finding confirmation for his reading as opposed to the one less hospitable to silent defendants. And this effort leads him to claim support in *McCarthy* v. *United States*, 394 U. S. 459 (1969), and the developments in the wake of that case culminating in the enactment of Rule 11(h). This approach, at least, gets us on the right track, for the one clearly expressed objective of Rule 11(h) was to end the practice, then commonly followed, of reversing automatically for any Rule 11 error, and that practice stemmed from an expansive reading of *McCarthy*. What that case did, and did not, hold is therefore significant.

When *McCarthy* was decided, Rule 11 was relatively primitive, requiring without much detail that the trial court personally address a defendant proposing to plead guilty and establish on the record that he was acting voluntarily, with an understanding of the charge and upon a factual basis supporting conviction. *Id.*, at 462.[7] When McCarthy stood be-

---

[7] Prior to its amendment in 1975, Rule 11 provided, in relevant part:

"The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

fore the District Court to plead guilty to tax evasion, however, the judge's colloquy with him went no further than McCarthy's understanding of his right to a jury trial, the particular sentencing possibilities, and the absence of any threats or promises. There was no discussion of the elements of the crime charged, or the facts that might support it. Indeed, despite the allegation that McCarthy had acted "willfully and knowingly," his lawyer consistently argued at the sentencing hearing that his client had merely been neglectful, *ibid.* Although defense counsel raised no objection to the trial court's deficient practice under Rule 11, this Court reversed the conviction on direct review. The Court rested the result solely on the trial judge's obvious failure to conform to the Rule, *id.*, at 464, and emphasized that the Rule's procedural safeguards served important constitutional interests in guarding against inadvertent and ignorant waivers of constitutional rights, *id.*, at 465. Although the Government asked to have the case remanded for further evidentiary hearing and an opportunity to show that McCarthy's plea had been made knowingly and voluntarily, the Court said no and ordered the plea and resulting conviction vacated.

Vonn does not, of course, claim that *McCarthy* held that a silent defendant had no plain-error burden, but he says that this must have been the Court's understanding, or it would have taken McCarthy's failure to object to the trial judge's Rule 11 failings, combined with his failure to meet the requirements of the plain-error rule, as a bar to relief. This reasoning is unsound, however, for two reasons, the first being that not a word was said in *McCarthy* about the plain-error rule, or for that matter about harmless error. The opinion said nothing about Rule 52 or either of the rules by name. The parties' briefs said nothing. The only serious issue was raised by the Government's request to remand the case for a new evidentiary hearing on McCarthy's state of mind when he entered the plea, and not even this had any-

thing to do with either the harmless- or plain-error rule. Under the former, the Government's opportunity and burden is to show the error harmless based on the entire record before the reviewing court, see *United States* v. *Hasting*, 461 U. S. 499, 509, n. 7 (1983); under the plain-error rule the Government likewise points to parts of the record to counter any ostensible showing of prejudice the defendant may make, see *United States* v. *Young*, 470 U. S. 1, 16 (1985). Under either rule, the Government's opportunity is to persuade with what it has, not to initiate further litigation. Yet further litigation is what the Government wanted in *McCarthy*. It argued that if the Court did not think that the existing record demonstrated that McCarthy's plea had been knowing and voluntary, the Court should remand for a further hearing with new evidence affirmatively making this showing, 394 U. S., at 469. When the Court said no, it made no reference to harmless or plain error, but cited the object of Rule 11 to eliminate time-wasting litigation after the fact about how knowing and voluntary a defendant really had been at an earlier hearing. *Id.*, at 469–470. And it expressed intense skepticism that any defendant would succeed, no matter how little he understood, once the evidence at a subsequent hearing showed that he had desired to plead. *Id.*, at 469. In sum, *McCarthy* had nothing to do with the choice between harmless-error and plain-error review; the issue was simply whether the Government could extend the litigation for additional evidence.

Vonn's attempt to read the *McCarthy* Court's mind is therefore purely speculative. What is worse, however, his speculation is less plausible than the view that the Court would probably have held that McCarthy satisfied the plain-error burdens if that had mattered. There was no question that the trial judge had failed to observe Rule 11, and the failing was obvious. So was the prejudice to McCarthy. Having had no explanation from the judge of the knowing and willful state of mind charged as of the time of the tax

violation, he pleaded guilty and was later sentenced at a hearing in which his lawyer repeatedly represented that McCarthy had been guilty of nothing but sloppiness.[8] The contradiction between the plea and the denial of the mental state alleged bespoke the prejudice of an unknowing plea, to which the judge's indifference was an affront to the integrity of the judicial system. While we need not religitate or rewrite *McCarthy* at this point, it is safe to say that the actual opinion is not even speculative authority that the plain-error rule stops short of Rule 11 errors.

Nor is there any persuasive reason to think that when the Advisory Committee and Congress later came to consider Rule 11(h) they accepted the view Vonn erroneously attributes to this Court in *McCarthy*. The attention of the Advisory Committee to the problem of Rule 11 error was not drawn by *McCarthy* so much as by events that subsequently invested that case with a significance beyond its holding. In 1975, a few years after *McCarthy* came down, Congress transformed Rule 11 into a detailed formula for testing a defendant's readiness to proceed to enter a plea of guilty, obliging the judge to give specified advice about the charge, the applicable criminal statute, and even collateral law. The Court in *McCarthy* had, for example, been content to say that a defendant would need to know of the right against self-incrimination and rights to jury trial and confrontation before he could knowingly plead. But the 1975 revision of Rule 11 required instruction on such further matters as cross-examination in addition to confrontation, see Fed. Rule Crim. Proc. 11(c)(3); the right to counsel "at . . . trial" even when the defendant stood in court with a lawyer next to him (as in this case), see *ibid.*; and even the consequences of any

---

[8] Nor did McCarthy claim that the guilty plea should be accepted on the *Alford* theory that a defendant may plead guilty while protesting innocence when he makes a conscious choice to plead simply to avoid the expenses or vicissitudes of trial. *North Carolina* v. *Alford*, 400 U. S. 25 (1970).

perjury the defendant might commit at the plea hearing, see Rule 11(c)(5).

Although the details newly required in Rule 11 colloquies did not necessarily equate to the importance of the overarching issues of knowledge and voluntariness already addressed in the earlier versions of the Rule, some Courts of Appeals felt bound to treat all Rule 11 lapses as equal and to read *McCarthy* as mandating automatic reversal for any one of them. See Advisory Committee's Notes on 1983 Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 1568 (hereinafter Advisory Committee's Notes) (citing *United States* v. *Boone,* 543 F. 2d 1090 (CA4 1976); *United States* v. *Journet,* 544 F. 2d 633 (CA2 1976)). This approach imposed a cost on Rule 11 mistakes that *McCarthy* neither required nor justified, and by 1983 the practice of automatic reversal for error threatening little prejudice to a defendant or disgrace to the legal system prompted further revision of Rule 11. Advisory Committee's Notes 1568.

The Advisory Committee reasoned that, although a rule of *per se* reversal might have been justified at the time *McCarthy* was decided, "[a]n inevitable consequence of the 1975 amendments was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require." Advisory Committee's Notes 1568. After the amendments, "it became more apparent than ever that Rule 11 should not be given such a crabbed interpretation that ceremony was exalted over substance." *Ibid.*

Vonn thinks the Advisory Committee's report also includes a signal that it meant to dispense with a silent defendant's plain-error burdens. He stresses that the report cited Courts of Appeals cases of "crabbed interpretation" that had given relief to nonobjecting defendants. By proposing only a harmless-error amendment to correct the mistakes made

in these cases, he says, the Committee must have thought that the Government's only answer to nonobjecting defendants should be to prove error harmless, if it could. But this argument ignores the fact that these cases were not merely instances of automatic reversal, but were cited along with harmless-error cases as illustrations of the "considerable disagreement" that arose after *McCarthy* among Courts of Appeals in treating errors of trivial significance. See Advisory Committee's Notes 1568. Given the Advisory Committee's apparent focus on the disarray among courts, the citations Vonn points to cannot reliably be read to suggest that plain-error review should never apply to Rule 11 errors, when the Advisory Committee Notes never made such an assertion and the reported cases cited by the Committee never mentioned the plain-error/harmless-error distinction.

We think, rather, that the significance of Congress's choice to adopt a harmless-error rule is best understood by taking the Advisory Committee at its word. "It must . . . be emphasized that a harmless error provision has been added to Rule 11 because some courts have read *McCarthy* as meaning that the general harmless error provision in Rule 52(a) cannot be utilized with respect to Rule 11 proceedings." *Id.*, at 1569. The Committee said it was responding simply to a claim that the harmless-error rule did not apply. Having pinpointed that problem, it gave a pinpoint answer. If instead the Committee had taken note of claims that "Rule 52" did not apply, or that "neither harmless-error nor plain-error rule applied," one could infer that enacting a harmless-error rule and nothing more was meant to rule out anything but harmless-error treatment. But by providing for harmless-error review in response to nothing more than the claim that harmless-error review would itself be erroneous, the Advisory Committee implied nothing more than it said, and it certainly did not implicitly repeal Rule 52(b) so far as it might cover a Rule 11 case.

C

A further reason to doubt that Congress could have intended Vonn's position is the tendency it would have to undercut the object of Rule 32(e), which governs withdrawing a plea of guilty by creating an incentive to file withdrawal motions before sentence, not afterward. A trial judge is authorized to grant such a presentence motion if the defendant carries the burden of showing a "fair and just reason" for withdrawal, and a defendant who fails to move for withdrawal before sentencing has no further recourse except "direct appeal or . . . motion under 28 U. S. C. 2255," subject to the rules covering those later stages. Fed. Rule Crim. Proc. 32(e). Whatever the "fair and just" standard may require on presentence motions,[9] the Advisory Committee Notes confirm the textual suggestion that the Rule creates a "'near-presumption'" against granting motions filed after sentencing, Advisory Committee's Notes on 1983 Amendment to Fed. Rule Crim. Proc. 32, 18 U. S. C. App., p. 1621 (quoting *United States* v. *Barker*, 514 F. 2d 208, 219 (CADC 1975)). This is only good sense; in acting as an incentive to think through a guilty plea before sentence is imposed, the Rule tends to separate meritorious second thoughts (say, a defendant's doubts about his understanding) and mere sour grapes over a sentence once pronounced. The "near-presumption" concentrates plea litigation in the trial courts, where genuine mistakes can be corrected easily, and promotes the finality required in a system as heavily dependent on guilty pleas as ours.

---

[9] The Courts of Appeals have held that a Rule 11 violation that is harmless under Rule 11(h) does not rise to the level of a "fair and just reason" for withdrawing a guilty plea. See *United States* v. *Driver*, 242 F. 3d 767, 769 (CA7 2001) ("Even an established violation of Rule 11 can be harmless error . . . and thus not a 'fair and just reason' to return to Square One"); *United States* v. *Siegel*, 102 F. 3d 477, 481 (CA11 1996); *United States* v. *Martinez-Molina*, 64 F. 3d 719, 734 (CA1 1995).

But the incentive to think and act early when Rule 11 is at stake would prove less substantial if Vonn's position were law; a defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders. This result might, perhaps, be sufferable if there were merit in Vonn's objection that applying the plain-error standard to a defendant who stays mum on Rule 11 error invites the judge to relax. The plain-error rule, he says, would discount the judge's duty to advise the defendant by obliging the defendant to advise the judge. But, rhetoric aside, that is always the point of the plain-error rule: the value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on.[10]

---

[10] Contrary to JUSTICE STEVENS's suggestion, *post*, at 78–80 (opinion concurring in part and dissenting in part), there is nothing "perverse" about conditioning the Government's harmless-error burden on an objection when the judge commits Rule 11 error. A defendant's right to counsel on entering a guilty plea is expressly recognized in Rule 11(c)(2), and counsel is obliged to understand the Rule 11 requirements. It is fair to burden the defendant with his lawyer's obligation to do what is reasonably necessary to render the guilty plea effectual and to refrain from trifling with the court. It therefore makes sense to require counsel to call a Rule 11 failing to the court's attention. It is perfectly true that an uncounseled defendant may not, in fact, know enough to spot a Rule 11 error, but when a defendant chooses self-representation after a warning from the court of the perils this entails, see *Faretta* v. *California*, 422 U. S. 806, 835 (1975), Rule 11 silence is one of the perils he assumes. Any other approach is at odds with Congress's object in adopting Rule 11, recognized in *McCarthy* v. *United States*, 394 U. S. 459, 465 (1969), to combat defendants' "often frivolous" attacks on the validity of their guilty pleas, by aiding the district judge in determining whether the defendant's plea was knowing and

In sum, there are good reasons to doubt that expressing a harmless-error standard in Rule 11(h) was meant to carry any implication beyond its terms. At the very least, there is no reason persuasive enough to think 11(h) was intended to repeal Rule 52(b) for every Rule 11 case.

### III

The final question goes to the scope of an appellate court's enquiry into the effect of a Rule 11 violation, whatever the review, plain error or harmless. The Court of Appeals confined itself to considering the record of "the plea proceeding," 224 F. 3d, at 1156, applying Circuit precedent recognizing that the best evidence of a defendant's understanding when pleading guilty is the colloquy closest to the moment he enters the plea. While there is no doubt that this position serves the object of Rule 11 to eliminate wasteful *post hoc* probes into a defendant's psyche, *McCarthy*, 394 U. S., at 470, the Court of Appeals was more zealous than the policy behind the Rule demands. The Advisory Committee intended the effect of error to be assessed on an existing record, no question, but it did not mean to limit that record strictly to the plea proceedings: the enquiry "'must be resolved solely on the basis of the Rule 11 transcript' and the other portions (*e. g.*, sentencing hearing) of the limited record made in such cases." Advisory Committee's Notes 1569 (quoting *United States* v. *Coronado*, 554 F. 2d 166, 170, n. 5 (CA5 1977)).

True, language in *McCarthy* ostensibly supports the position taken by the Court of Appeals (which did not, however, rest on it); we admonished that "[t]here is no adequate substi-

---

voluntary and creating a record at the time of the plea supporting that decision.

Vonn's final retort that application of the plain-error rule would tend to leave some "unconstitutional pleas" uncorrected obviates the question in this case, which is who bears the burden of proving that Rule 11 error did or did not prejudice the defendant: the Government or the defendant?

tute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him," 394 U. S., at 470 (emphasis in original). But *McCarthy* was decided before the enactment of Rule 11(h), which came with the commentary just quoted, and *McCarthy* in any event was not a case with a record of anything on point, even outside the Rule 11 hearing. The Government responded to the laconic plea colloquy not by referring to anything illuminating in the record; instead it brought up the indictment, tried to draw speculative inferences from conversations McCarthy probably had with his lawyer, and sought to present new evidence. The only serious alternative to "the record at the time the plea [was] entered" was an evidentiary hearing for further factfinding by the trial court.

Here, however, there is a third source of information, outside the four corners of the transcript of the plea hearing and Rule 11 colloquy, but still part of the record. Transcripts brought to our attention show that Vonn was advised of his right to trial counsel during his initial appearance before the Magistrate Judge and twice at his first arraignment. The record shows that four times either Vonn or his counsel affirmed that Vonn had heard or read a statement of his rights and understood what they were. Because there are circumstances in which defendants may be presumed to recall information provided to them prior to the plea proceeding, cf. *Bousley* v. *United States,* 523 U. S. 614, 618 (1998) (a defendant with a copy of his indictment before pleading guilty is presumed to know the nature of the charge against him), the record of Vonn's initial appearance and arraignment is relevant in fact, and well within the Advisory Committee's understanding of "other portions . . . of the limited record" that should be open to consideration. It may be considered here.

The transcripts covering Vonn's first appearance and arraignment were not, however, presented to the Court of Appeals. Probably owing to that court's self-confinement to a

narrower record, it made no express ruling on the part of the Government's rehearing motion requesting to make the first-appearance and arraignment transcripts part of the appellate record. For that reason, even with the transcripts now in the parties' joint appendix filed with us, we should not resolve their bearing on Vonn's claim before the Court of Appeals has done so. *Adarand Constructors, Inc.* v. *Mineta*, 534 U. S. 103 (2001).

We therefore vacate the Court of Appeals's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in part and dissenting in part.

For the reasons stated in Part III of the Court's opinion, I agree that the effect of a violation of Rule 11 of the Federal Rules of Criminal Procedure should be evaluated on the basis of the entire record, rather than just the record of the plea colloquy, and that a remand is therefore required. Contrary to the Court's analysis in Part II of its opinion, however, I am firmly convinced that the history, the text of Rule 11, and the special office of the Rule all support the conclusion, "urged by the Government" in *McCarthy* v. *United States*, 394 U. S. 459, 469 (1969), that the burden of demonstrating that a violation of that Rule is harmless is "place[d] upon the Government," *ibid.*

In *McCarthy*, after deciding that the trial judge had not complied with Rule 11, the Court had to "determine the effect of that noncompliance, an issue that ha[d] engendered a sharp difference . . . among the courts of appeals." *Id.*, at 468. The two alternatives considered by those courts were the automatic reversal rule that we ultimately unanimously endorsed in *McCarthy* and the harmless-error rule urged by

the Government.[1]   No one even argued that the defendant should have the burden of proving prejudice.[2]   The Court's conclusion that "prejudice inheres in a failure to comply with Rule 11" was uncontroversial.[3]   *Id.*, at 471.

During the years preceding the 1983 amendment to Rule 11, it was generally understood that noncompliance with Rule 11 in direct appeal cases required automatic reversal. See Advisory Committee's Notes on 1983 Amendments to Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 1568 (hereinafter Advisory Committee's Notes) (citing *United States* v. *Boone,* 543 F. 2d 1090 (CA4 1976); *United States* v. *Journet,* 544 F. 2d 633 (CA2 1976)).   Thus, prior to the addition of Rule 11(h), *neither* plain-error[4] nor harmless-error review applied to Rule 11 violations.   Rejecting *McCarthy's* "ex-

---

[1] *McCarthy* was decided 15 years after the adoption of Rule 52, and yet neither the parties nor the Court discussed the application of that Rule despite the fact that the defendant had failed to object to the Rule 11 error.

[2] Nor did the Government make such an argument in the Court of Appeals in this case.   That should be a sufficient reason for refusing to consider the argument here, see *United States* v. *Williams,* 504 U. S. 36, 55–61 (1992) (STEVENS, J., dissenting), but, as in *Williams,* the Court finds it appropriate to accord "a special privilege for the Federal Government," *id.,* at 59.

[3] "We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea." *McCarthy,* 394 U. S., at 471–472. Not a word in the proceedings that led to the amendment rejecting the automatic reversal remedy questioned the validity of the proposition that every violation of the Rule is presumptively prejudicial.   The amendment merely gives the Government the opportunity to overcome that presumption.

[4] Rule 52(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."   When a court reviews for plain error, the burden is on the defendant to show that the error affected his substantial rights.   *United States* v. *Olano,* 507 U. S. 725, 734–735 (1993).

treme sanction of automatic reversal" for technical violations, Congress added subsection 11(h), which closely tracks the harmless-error language of Rule 52(a).[5]  Advisory Committee's Notes 1569.  As the Advisory Committee's Notes make clear, "Subdivision (h) makes no change in the responsibilities of the judge at Rule 11 proceedings, but instead *merely* rejects the extreme sanction of automatic reversal." *Ibid.* (emphasis deleted and added).  The plain text thus embodies Congress' choice of incorporating the standard found in Rule 52(a), while omitting that of Rule 52(b).[6]  Because the pre-existing background of Rule 11 was that Rule 52(b) did not apply, and because the amendment adding Rule 52(a) via subsection (h) did not also add Rule 52(b), the straightforward conclusion is that plain-error review does not apply to Rule 11 errors.

Congress' decision to apply *only* Rule 52(a)'s harmlesserror standard to Rule 11 errors is tailored to the purpose of the Rule.  The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them.  It is thus perverse to place the burden on the uninformed defendant to object to deviations from Rule 11 or to establish prejudice arising out of the judge's failure to mention a right that he does not know he

---

[5] Rule 52(a) states: "Harmless error.  Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 11(h) states: "Harmless error.  Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

[6] The Court incorrectly asserts that this is an argument for repeal by implication of Rule 52(b).  *Ante,* at 65 ("To hold that the terms of Rule 11(h) imply that the latter half of Rule 52 has no application to Rule 11 errors would consequently amount to finding a partial repeal of Rule 52(b) by implication, a result sufficiently disfavored").  This ignores the fact that prior to the enactment of Rule 11(h), courts applied neither Rule 52(a) nor (b) to Rule 11 violations.

has.[7]   Under the Court's approach, the Government bears the burden of establishing no harm only when the defendant objects to the district court's failure to inform him.   In other words, the Government must show prejudice only when the defendant asks the judge to advise him of a right of which the Rule 11 colloquy assumes he is unaware.   To see the implausibility of this, imagine what such an objection would sound like: "Your Honor, I object to your failure to inform me of my right to assistance of counsel if I proceed to trial."

Despite this implausible scenario, and to support the result that it reaches, the Court's analysis relies upon an image of a cunning defendant, who is fully knowledgeable of his rights, and who games the system by sitting silently as the district court, apparently less knowledgeable than the defendant, slips up in following the dictates of Rule 11.   See, *e. g., ante,* at 63 ("[A] defendant loses nothing by failing to

---

[7] The Court states that this is like any other application of the plain-error rule as it is applied to all trial errors.   *Ante,* at 73 ("The plain-error rule, [Vonn] says, would discount the judge's duty to advise the defendant by obliging the defendant to advise the judge.   But, rhetoric aside, that is always the point of the plain-error rule . . .").   Unlike most rules that apply to a trial, however, the special purpose of the Rule 11 colloquy is to provide information to a defendant prior to accepting his plea.   Given this purpose, it is inconceivable that Congress intended the same rules for review of noncompliance to apply.   A parallel example from the self-representation context illustrates this point.   Pursuant to *Faretta* v. *California,* 422 U. S. 806 (1975), a defendant who wishes to represent himself must "be made aware of the dangers and disadvantages of self-representation," *id.,* at 835.   Assume a defendant states that he wishes to proceed *pro se,* and the trial judge makes no attempt to warn the defendant of the dangers and disadvantages of self-representation.   If the defendant makes no objection to the trial court's failure to warn, surely we would not impose a plain-error review standard upon this nonobjecting defendant.   This is so because the assumption of *Faretta*'s warning requirement is that the defendant is unaware of the dangers.   It is illogical in this context, as in the Rule 11 context, to require the presumptively unknowing defendant to object to the court's failure to adequately inform.   Congress' decision to apply the harmless-error standard to all Rule 11 errors surely reflects this logic.

object to obvious Rule 11 error when it occurs"); *ante,* at 73 ("[A] defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory"). My analysis is based on a fundamentally different understanding of the considerations that motivated the Rule 11 colloquy requirements in the first place. Namely, in light of the gravity of a plea, the court will assume no knowledge on the part of the defendant, even if represented by counsel, and the court must inform him of a base level of information before accepting his plea.[8]

The express inclusion in Rule 11 of a counterpart to Rule 52(a) and the omission of a counterpart to Rule 52(b) is best understood as a reflection of the fact that it is only fair to place the burden of proving the impact of the judge's error on the party who is aware of it rather than the party who is unaware of it. This burden allocation gives incentive to the judge to follow meticulously the Rule 11 requirements and to the prosecutor to correct Rule 11 errors at the time of the colloquy. The Court's approach undermines those incentives.

I would remand to the Court of Appeals to determine whether, taking account of the entire record, the Government has met its burden of establishing that the District Court's failure to inform the respondent of his right to counsel at trial was harmless.

---

[8] See *Kercheval* v. *United States,* 274 U. S. 220, 223 (1927) ("A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. . . . Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences").