**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Victor Donell MASON, Defendant–
Appellant.**

**No. 01–50385.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2002.

Decided April 17, 2002.

Before PREGERSON, FISHER and TALLMAN, Circuit Judges.

### MEMORANDUM *

Victor Donell Mason reprogrammed and sold access cards that permit individuals to view Direct TV programming without Direct TV's consent. After selling access cards to private investigators hired by Direct TV, Mason was arrested and convicted under 47 U.S.C. § 605(e)(4). He attended a change of plea hearing and the district court accepted his guilty plea, but on appeal Mason claims that his conviction should be vacated because he did not personally enter the guilty plea. Mason further claims that the district court violated Rule 11 by failing to advise him of his right to a jury trial. Finally, Mason challenges his sentence. We affirm.

■ First, the district court did not violate Rule 11 by failing to elicit from Mason the precise words "I plead guilty." Mason answered "yes" when the court asked him if he understood what he was doing and if he was "pleading guilty freely and voluntarily." He answered "no" when the court asked him if he had been forced to "plead guilty." He also admitted that he committed the crime. Mason did not express any reluctance or confusion about his guilty plea. Under these circumstances, Rule 11 did not require the district court to ask Mason personally at the end of the hearing, "How do you plead?".

■ The district court did not specifically advise Mason that he had a right to a trial by jury, but this error does not warrant reversal. Because Mason did not raise this issue before the trial court, we review it for plain error. *United States v. Vonn,* —— U.S. ——, ——, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002). This Circuit has

not decided how to resolve the question of whether a Rule 11 error is "plain" or whether it affects the defendant's "substantial rights." *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We need not do so here, however, because Mason cannot satisfy even the harmless error standard. A Rule 11 violation is harmless when the record affirmatively shows that the defendant was aware of the rights at issue at the time he entered his guilty plea. *United States v. Graibe,* 946 F.2d 1428, 1431 (9th Cir.1991). Before *Vonn,* we examined only the transcript of the plea colloquy to determine what the defendant knew. *Graibe,* 946 F.2d at 1434–1435. After *Vonn,* our review is not so limited. *Vonn,* 122 S.Ct. at 1055. Even though the transcript of Mason's plea colloquy does not affirmatively demonstrate that he was aware of his right to trial by jury, the error is harmless because another document shows that he was aware of his right to a jury trial. Mason signed a "Statement of Defendant's Constitutional Rights," which stated: "You are entitled to a speedy and public trial by jury. If you wish to waive a jury trial, you must be tried by the Court sitting without a jury."

■ Second, the district court did not err in imposing a 2–level upward adjustment under U.S.S.G. § 2B5.3(b)(2). Application Note 1 defines "infringing item" to mean "the item that violates the copyright or trademark laws." U.S.S.G. § 2B5.3 app. n. 1. By permitting individuals to illegally gain access to scrambled electronic signals, the reprogrammed access cards fit the definition of "infringing item." *Cf.* U.S.S.G. § 2B5.3, app. note background ("[T]he interception of satellite transmissions for purposes of direct or indirect

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

commercial advantage or private financial gain ... are similar to copyright offenses and are therefore covered by this guideline.").

Finally, the district court did not clearly err in finding Mason to be responsible for 400 unauthorized access cards. Mason told a private investigator that he had sold 400 cards, and his subsequent statement to the FBI that he had sold "well over" 100 but "not even close" to 1000 is consistent with an estimate of 400. Mason also indicated that he had been in the business of selling access cards for about one year.

AFFIRMED.