# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 20, 2009

Charles R. Fulbruge III
Clerk

No. 07-51415
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RANDY GAITAN CASTRO, also known as Peabody

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CR-31-2

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The attorney appointed to represent Randy Gaitan Castro has moved for leave to withdraw and has filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967). Castro has filed a response and requested the appointment of new counsel. Our independent review of the record, counsel's brief, and Castro's response discloses no nonfrivolous issue for appeal.

I.

The Government indicted Randy Gaitan Castro on one count of conspiracy to possess one or more kilograms of heroin with intent to distribute and three

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

counts of possession of heroin with intent to distribute. Castro pleaded guilty by a written plea agreement to the conspiracy count in exchange for a sentence of not more than thirty years in prison and five years of supervised release and the Government's agreement to drop the remaining counts. In the factual basis for his plea, he stipulated that he had been part of a drug trafficking organization that "obtain[ed] loads of heroin from Mexico on a regular basis[,]" repackaged it into smaller quantities, and distributed it. As a term of the plea agreement, Castro "voluntarily and knowingly waive[d] any right to appeal both his conviction and his sentence, including any appeal right conferred by 18 U.S.C. § 3742, as amended by . . . *U.S. v Booker and Fanfan.*" In a separate paragraph, he waived the right to collaterally attack his conviction and sentence, although he reserved "the right to challenge the sentence to the extent that it is the result of a violation of the Defendant's constitutional rights based on claims of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension." He asserted in the signed agreement that his attorney advised him of the nature of the charges, the possible defenses, and the range of possible sentences and that he was "satisfied that [his] counsel . . . provided competent representation."

Using the 2007 Guidelines, the probation officer assigned a base offense level of 36 because the offense involved at least 14.86 kilograms of heroin. The officer recommended a two-level enhancement because dangerous weapons were possessed in conjunction with the offense. She recommended another four-level increase because Castro was a leader or organizer of criminal activity involving at least five participants. After a three-level downward adjustment for acceptance of responsibility, the officer recommended a total offense level of 39. That score, combined with Castro's criminal history category of II, resulted in a guidelines sentencing range of 292 to 365 months in prison. Castro did not object to the PSR.

The district court found that Castro was the leader or organizer of the heroin distribution organization. It also found that an earlier sentence of probation had not deterred him from criminal activity. Weighing the seriousness of the crime and the particular facts and circumstances of the case under 18 U.S.C. § 3353(a), the district court determined that a guidelines sentence was appropriate. The court sentenced Castro at the bottom of the range to 292 months in prison and a five-year term of supervised release. It imposed a $100 special assessment and a $1,000 fine. Castro filed a timely notice of appeal.

The attorney appointed to represent Castro moved to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. at 744, asserting that there are no nonfrivolous issues for appeal. In compliance with *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006), and *United States v. Acquaye*, 452 F.3d 380, 382 (5th Cir. 2006), counsel certified that the Government seeks to enforce Castro's appeal waiver. Counsel contends that, because of Castro's knowing and voluntary appeal waiver, and because he lacks a valid claim for ineffective assistance of counsel or for prosecutorial misconduct, no nonfrivolous issues exist to support the appeal.

Castro filed a response asserting that he was coerced into pleading guilty by his attorney. He asserts that counsel threatened him and provided incomplete information and misleading advice. He notes that he was in a special education program before dropping out of high school and asserts that he was unable to read or understand the indictment and the plea agreement.

## II.

Because this case involves an appeal waiver that the Government seeks to enforce, to determine whether the waiver bars Castro's appeal, this Court considers "(1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (citing

*United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005)).  Federal Rule of Criminal Procedure 11 "ensure[s] that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002).  Because Castro did not object to the Rule 11 colloquy, it is reviewed only for plain error.  *See id.* at 59.

Castro's assertions that he was under duress from his attorney's actions and that he did not understand the charges against him or the plea agreement are not supported by the record.  At the outset of the rearraignment, the Magistrate Judge delivered careful instructions to Castro:

> Over the next few minutes, I'm going to be asking you several questions, and the purpose of my questions is to make sure you understand what you're doing by pleading guilty.  If you have any questions, please stop me and ask your questions.  Or if you need more time to talk to your lawyers, please just let me know that because it's important that if you have any questions or if you don't understand something that you have that taken care of today.  You can't come back later and say that you didn't know what you were doing or you didn't understand something.  So will . . . you do that?

Castro responded, "Yes, sir."  Throughout the subsequent hearing, he never indicated that he did not understand the charges against him or the plea agreement, and he never asked any questions.  Even after another defendant paused to confer with his attorney before entering his plea, Castro assured the Magistrate Judge that he did not need any additional time to confer with his counsel, and proceeded to plead guilty.

Castro now asserts that he was under duress when he pleaded guilty because his attorney told him that he would receive life in prison if he did not accept the plea offer.  However, during his rearraignment, Castro testified that he was pleading guilty because he was guilty "and for no other reason" and that his guilty plea was given "freely and voluntarily."  He testified that no one forced him to plead guilty or promised him anything other than what was in the plea agreement.  When the Magistrate Judge asked him specifically whether

"anybody made any promise or prediction as to what your sentence will be in this case, other than what I have told you," Castro responded, "No, sir."

Castro also complains that his attorney did not explain the charges or the plea agreement to him, despite his requests. He asserts that he would not have pleaded guilty if counsel had not misrepresented the situation and refused to explain things to him. He also asserts that counsel pressed him to say "yes" to the Magistrate Judge's questions. Again Castro's allegations are unsupported by the record. During his rearraignment, his attorney told the Magistrate Judge that she discussed the case with Castro, that she talked to him about the charges and any possible defenses, that she explained his constitutional and statutory rights, and that she believed him to have both a factual and a rational understanding of the guilty plea. Castro himself testified that he had enough time to discuss his case with counsel and that they discussed the charges against him and his possible defenses. He testified that he was satisfied with counsel's representation. In addition, the Magistrate Judge himself explained the charge to Castro before the guilty plea. Castro stated that he understood. As noted above, he did not ask the Magistrate Judge any questions.

The record also does not support Castro's claim that he could not understand the terms of the plea agreement because he was in the special education program and did not finish high school. The PSR establishes that, although Castro was in special education classes, he remained in high school until the twelfth grade. During the rearraignment, the Magistrate Judge asked Castro whether he suffered from any mental problem that would prevent him from understanding the proceeding, and Castro responded, "No, sir."

Castro alleges that, when the district court asked him whether he understood that he was waiving his right to appeal, he responded yes only because his attorney nudged him and told him to do so. The allegation is not supported by the record. The Magistrate Judge carefully described the appeal waiver to Castro, telling him that he was waiving "all of the rights that you have

5

to appeal your sentence. So if the court sentences you between ten years and thirty years, you can't appeal that sentence. That's going to be the sentence that you will have." Castro stated that he understood, and there is no indication in the transcript that counsel spoke to him before he answered. The Magistrate Judge then asked whether Castro had any questions, and he responded, "No, sir."

In sum, there is no evidentiary support in the record for Castro's claim that his plea was unknowing or involuntary. His responses to the Magistrate Judge's questions indicate that he understood the proceedings, was competent to enter a guilty plea, and was aware of the consequences of his plea. Castro's in-court declarations under oath carry a strong presumption of verity that his conclusional assertions on appeal cannot overcome. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). Accordingly, under the current record, we conclude that the plea agreement's explicit, unambiguous appeal waiver was both knowing and voluntary. FED. R. CRIM. P. 11(b)(1)(N); *Bond*, 414 F.3d at 544. Although he reserved the right to assert ineffective assistance of counsel and/or prosecutorial misconduct in a collateral action – matters as to which we express no opinion – Castro waived the right to raise any challenge to his conviction or sentence on direct appeal.

III.

Accordingly, counsel's motion for leave to withdraw is GRANTED, counsel is excused from further responsibilities herein, Castro's motion for appointment of new counsel is DENIED, and the APPEAL IS DISMISSED. *See* 5TH CIR. R. 42.2.