[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11561

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                                     Plaintiff-Appellee,

*versus*

LOUIS PAIVA, JR.,

                                                     Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cr-00031-MW-MAF-1

_____

Before ROSENBAUM, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Louis Paiva, Jr., appeals his conviction for stealing federal money by making false statements on an application for COVID-19 unemployment relief funds. He argues that the district court plainly erred in accepting his plea because, his false statements aside, he qualified for the benefits and thus didn't steal them. But the district court didn't plainly err in finding a factual basis to conclude that Paiva wasn't entitled to the unemployment benefits, so we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To alleviate the economic effects of COVID-19, Congress enacted legislation in March 2020 that provided supplemental funding for state-administered unemployment benefits. The President reallocated additional disaster relief funds in August 2020 for the same purpose. The result was four programs that worked together to channel federal financial aid to persons who'd lost employment income due to the pandemic: Pandemic Unemployment Assistance, Federal Pandemic Unemployment Compensation, Pandemic Emergency Unemployment Compensation, and Lost Wages Assistance.

In early 2022, the Department of Homeland Security began investigating employees who might have applied for and received unemployment benefits while they were still working for the

government.  Investigators determined that, between March 2020 and March 2021, Paiva had received over $16,000 (after taxes) in unemployment benefits through the pandemic relief programs—even while employed the whole time by the Transportation Security Administration in Orlando.  Paiva had submitted an application for unemployment benefits to the Florida Department of Economic Opportunity where he certified that (1) he was not a federal civilian employee, (2) he did not work full time, and (3) he was not earning at least $275 per week.  None of those things were true.  Likewise, Paiva repeatedly submitted recertifications for unemployment benefits that falsely claimed he wasn't "earn[ing] any money," wasn't "receiv[ing] . . . income from any other sources that [he hadn't] previously reported" to the state, and was "still unemployed as a direct result of COVID-19."

Paiva agreed to a voluntary interview with DHS agents in March 2022.  He told the agents that he had started a computer-repair company in 2018 that supplemented his government salary, but his self-employment earnings collapsed during the pandemic.  When confronted with bank statements and his falsified unemployment benefits applications, Paiva initially told the agents that he believed the questions about alternative income related only to his self-employment at his computer repair business.  But he later admitted that he knew when he submitted the application and recertifications that his claims to lack additional income were false.  Paiva provided a sworn statement to the agents stating that he'd made false statements on the unemployment benefits application but wanted to make it right.

Paiva was indicted for theft of more than one thousand dollars of public money, in violation of 18 U.S.C. section 641. He pleaded guilty and stipulated to the facts described above. The plea agreement provided that Paiva was waiving his trial rights, that he was "in fact guilty," and that there was "substantial evidence . . . to support the charge[], . . . as indicated in the agreed-upon statement of facts" he'd signed. In exchange, the government agreed not to file any additional charges based on the events that gave rise to the indictment.

At the plea hearing, Paiva testified that he'd signed the plea agreement knowingly and voluntarily, that he understood he was waiving his right to appeal his guilt or innocence, and that he understood the charges in the indictment and the elements of the offense. When asked about the offense conduct, Paiva admitted that he "knowingly made false statements to get money that [he] knew [he wasn't] entitled to." The district court accepted his plea under Federal Rule of Criminal Procedure 11 and adjudicated Paiva guilty. Paiva was sentenced to six months' imprisonment and ordered to pay restitution. This is his appeal.

## DISCUSSION

Paiva contends that the district court plainly erred in accepting his guilty plea because there wasn't a sufficient factual basis for it to do so. *See* Fed. R. Crim. P. 11(b)(3). He argues that the pandemic-relief programs he applied to entitled him to receive unemployment benefits for lost wages from his self-employment as a computer repairman, even though he was employed and had

additional income at the time.  If Paiva was entitled to the benefits he received, he contends, then the government did not "retain[] a property interest" in them to be wrongfully deprived of.  *See United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993).  And if the money did not belong to the government, then there was no factual basis for his plea.  *See United States v. Wilson*, 788 F.3d 1298, 1309 (11th Cir. 2015) (To prove theft, the government must established "that (1) the money described in the indictment belonged to the United States or an agency thereof; (2) the defendant appropriated the property to his own use; and (3) the defendant did so knowingly with intent to deprive the government of the money.").

We can review Paiva's "Rule 11 claim that there [was] an insufficient factual basis to support a guilty plea," even though he didn't raise it to the district court.  *United States v. Puentes-Hurtado*, 974 F.3d 1278, 1284 (11th Cir. 2015).  But, because the Rule 11 argument wasn't raised to the district court, our review is for plain error.  *See id.* at 1285–86 (citing Fed. R. Crim. P. 52(b)); *see also United States v. Vonn*, 535 U.S. 55, 58–59 (2002) (holding that "a defendant who lets a Rule 11 error pass without objection in the trial court" may challenge such an error under "the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantive rights").

To establish that the district court plainly erred in accepting his guilty plea without a factual basis, Paiva must show that:  (1) the district court erred; (2) the error was plain; (3) the error affected his substantial rights; and (4) it seriously affected the fairness,

integrity, or public reputation of judicial proceedings. *United States v. Kushmaul*, 984 F.3d 1359, 1363 (11th Cir. 2021). "Regarding the second prong of the test, such error must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it." *Id.* (quotation and alteration omitted). "When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *Id.* (quotation omitted).

Here, any error in accepting the guilty plea without a factual basis was not so clear and obvious. As part of the Coronavirus Economic Stabilization Act, the Pandemic Emergency Unemployment Compensation program allowed states to receive federal funds to extend unemployment benefits to "individuals who . . . ha[d] exhausted all rights to compensation under [s]tate law" for that benefit year, had "no rights to regular compensation with respect to a week under such law or any other [s]tate unemployment compensation law" and were "able to work, available to work, and actively seeking work." 15 U.S.C. § 9025(a)(2). This program also conditioned eligibility upon "the terms and conditions of the [s]tate law which appl[ied] to claims for regular compensation and to the payment thereof (including terms and conditions relating to availability for work, active search for work, and refusal to accept work) . . . , except where otherwise inconsistent with the provisions" of that program. *Id.* § 9025(a)(4)(B). An individual was not deemed "actively seeking work" unless he had "engaged in an

active search for employment . . . appropriate in light of the employment available in the labor market, the individual's skills and capabilities," and "ha[d] maintained a record of such work search." *Id*. § 9025(a)(7)(A).

Despite receiving thousands of dollars under the Pandemic Emergency Unemployment Compensation program, Paiva did not clearly and obviously qualify for the unemployment benefits. The district court had no indication in the record that Paiva was actively seeking work when he applied for state benefits. *See id*. § 9025(a)(2)(D). He had a full-time job, and nothing in the record indicated that he was searching for other employment while he was applying to or receiving funds from the state.

Also, the program conditioned receipt of funds on an individual's general eligibility for state-provided unemployment benefits according to the relevant "terms and conditions" of the state unemployment insurance system. *Id*. § 9025(a)(4)(B). But an individual is only qualified to receive Florida unemployment benefits if he is, in fact, "unemployed." Fla. Stat. § 443.091(1). There is no place within the state's definition of "unemployed" for someone working a full-time job—or even working "less than full-time work," so long as his weekly income is greater than his "weekly benefit amount" under state law. *Id*. § 443.036(44).

Because Paiva wasn't unemployed, he wasn't clearly and obviously eligible for state benefits. And because he wasn't clearly and obviously eligible for state benefits, the district court did not plainly err in finding that Paiva was not entitled to the thousands

of dollars in supplemental federal benefits he received under the Pandemic Emergency Unemployment Compensation program.

**AFFIRMED.**