OPINION
{¶ 1} Appellant, Corey Spears, appeals pursuant to In Re:Anderson (2001), 92 Ohio St.3d 63, 748 N.E.2d 67, from the August 9, 2005 judgment entry of the Licking County Court of Common Pleas, Juvenile Division. Appellee is the State of Ohio.
 {¶ 2} Appellant appeals on the basis that the Licking County Court of Common Pleas, Juvenile Division, erred when it accepted his plea of admission without substantially complying with the requirements of Juv. R. 29(D). The following facts give rise to this appeal.
 {¶ 3} On August 9, 2005, Appellant, a juvenile, was brought before the court on two case numbers, case number A2005-0616 concerning two counts of Grand Theft, felonies of the 4th
degree, and case number A2004-0329 involving a probation violation.
 {¶ 4} At the hearing on August 9th, the Court inquired concerning two sets of rights papers which appellant and his mother had signed. Theses documents were made part of the trial court file. Appellant acknowledged receipt, reading and understanding of the rights contained in the papers. (T. at 2).
 {¶ 5} The magistrate then inquired:
 {¶ 6} "THE COURT: Do you understand that you have the right to be represented by an attorney at today's hearing?
 {¶ 7} "COREY SPEARS: Yes, sir.
 {¶ 8} "THE COURT: If you cannot afford an attorney and you qualify under state guidelines, I will appoint an attorney to represent you. Do you understand that?
 {¶ 9} "COREY SPEARS: Yes, sir.
 {¶ 10} "THE COURT: Do you wish to go forward with today's hearing without an attorney?
 {¶ 11} "COREY SPEARS: Yes, sir.
 {¶ 12} "THE COURT: Ms. Spears, do you agree with Corey's decision today to go forward without an attorney?
 {¶ 13} "MS. SPEARS: Yes, sir."
 {¶ 14} T. at 2-3.
 {¶ 15} The magistrate then explained the charges against appellant, including the facts and degree of offenses. (Id. at 3-4). After each charge was explained, the trial court asked Appellant if he understood the charge, and Appellant consistently answered in the affirmative.
 {¶ 16} Pursuant to Juv.R. 29(B)(2) and (D), the trial court informed Appellant of the possible consequences of being found delinquent or admitting to the delinquency charge, which Appellant said he understood.
 {¶ 17} The magistrate informed Appellant he had the right to remain silent and a right to go to trial to present evidence in his defense. Appellant stated he understood his right to go to trial and present a defense. The trial court explained to Appellant that he had the right to cross-examine witnesses and that the prosecution had the burden to show he committed the crimes by proof beyond a reasonable doubt. Appellant stated that he understood those rights. Appellant state that there had been no promises or threats made to coerce him into pleading to the charges. The court informed appellant that by entering an admission to the charges the court would proceed directly to disposition to determine what punishment or conditions should be imposed upon appellant. Appellant stated that he understood. Appellant stated that he understood what the Department of Youth Services is and that by entering an admission to the charges he could be committed to the custody of the Department of Youth Services "for a minimum period of six months or twelve months and a maximum period not to exceed age twenty-one". (T. at 5). Appellant stated that he understood he could be sentenced to the Department of Youth Services. (Id.)
 {¶ 18} Appellant entered admissions to all charges and was adjudicated delinquent. (T. at 3-5, 7). The court committed appellant to the Department of Youth Services for a minimum of six months on each charge, maximum of his twenty-first birthday, and ordered the commitments to be imposed consecutively. (T. at. 9-10). The court imposed court costs and restitution, and suspended appellant's right to apply for a driver's license until his twenty-first birthday. (T. at 11).
 {¶ 19} Appellant and his mother were both informed of their right to object to the magistrate's decision pursuant to Juv. R. 40. (See, Right to File Written Objections, Acknowledgement of Receipt, Waiver of Objections, filed August 9, 2005). The appellant and his mother acknowledged receipt of the magistrate's decision and both waived their right to file written objections and consented to the decision of the magistrate. (Id.). The trial judge then accepted the magistrate's decision.
 {¶ 20} On September 9, 2005, appellant filed a Notice of Appeal of case numbers A2004-0329 and A2005-0616. Appellant's counsel did not allege at that time that the failure to timely file the Notice of Appeal was because appellant was never served with the final judgment in the trial court. On October 3, 2005, this Court ordered that the appeal be dismissed as untimely filed. On October 7, appellant's counsel filed a motion to reconsider claiming that appellant was not served with a copy of the judgment entry in compliance with the Civil Rules. Counsel did not attach an affidavit from appellant wherein he swore he never received notice, nor did counsel provide this court with a copy of the court's docket, which indicates appellant was in fact properly served in compliance with the Civil Rules. On October 28, 2005, this Court vacated the order of dismissal and reinstated this appeal.
 {¶ 21} Appellant sets forth the following four assignments of error for our consideration:
 {¶ 22} "I. The trial court violated Corey Spears' Rights to Counsel and to Due Process under the Fifth, Sixth, andFourteenth Amendments to the United States Constitution, Article I, Section16 of the Ohio Constitution, Ohio Revised Code Section 2151.352
and Juvenile Rules 4 and 29. (T. at. 2-13)".
 {¶ 23} "II. Corey Spears' admission to his probation violation was not knowing, voluntary, and intelligent, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution, and Juvenile Rules 29, and 35(B). (T. at 7)".
 {¶ 24} "III. The trial court erred in depriving Corey Spears of his right to apply for driving privileges because the statute does not provide for that sanction as a dispositional option for Corey's offenses. (A-1-2)".
 {¶ 25} "IV. The trial court erred when it failed to hold a hearing to determine whether Corey Spears, a juvenile, was able to pay the sanction imposed by the juvenile court and when it failed to consider community service in lieu of the financial sanctions in violation of R.C. 2152.20. (A-1-2); (July 20, 2005 T.p. 10)".
 I. II. {¶ 26} Appellant contends in his first two assignments of error that he had a statutory right to appointed counsel and that he did not validly waive his right to counsel prior to entering his admissions in the trial court. Because these issues are interrelated we shall address them together.
 {¶ 27} Appellant first contends that he has a statutory right to counsel pursuant to R.C. 2151.352. We disagree.
 {¶ 28} The statute provides, in pertinent part:
 {¶ 29} "A child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person pursuant to Chapter 120. of the Revised Code. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. * * * "(Emphasis added).
 {¶ 30} Appellant's counsel blatantly misquotes R.C. 2151.352
to bolster her position that the right to counsel is mandatory. Nowhere does the statue read "Counsel must be appointed for a child not represented by his parent, guardian or custodian." (Appellant's Brief at 4). In fact, this court has held "pursuant to R.C. 2151.352, Juv.R. 4(A) and Juv.R. 29(B), appellant was entitled to appointed counsel provided she did not knowinglywaive this right". In re Kindred, 5th Dist. No. 04CA7,2004-Ohio-3647 at ¶ 19; In re Christner, 5th Dist. No. 2004APO20014, 2004-Ohio-4252 at ¶ 13-14. [Emphasis added]. See, also In re Gault, (1967), 387 U.S. 1, 42, 87 S.Ct. 1428,1451. ("They [the juvenile and his mother] had a right expressly to be advised that they might retain counsel and to be confronted with the need for specific consideration of whether they did or did not choose to waive the right. If they were unable to afford to employ counsel, they were entitled in view of the seriousness of the charge and the potential commitment, to appointed counsel,unless they chose waiver"). (Emphasis added).
 {¶ 31} Appellant next maintains that he did not waive his right to counsel.
 {¶ 32} Recently, the United States Supreme Court has suggested that "[t]he omission of a single Rule 11 warning without more is not colorable structural [error] . . ." UnitedState v. Dominguez-Benitez (June 14, 2004), ___ U.S. ___,124 S.Ct. 2333, 2339 at n. 6, 159 L.Ed.2d 157. Accordingly, reversal is not automatically required. Id. at 2338. Rather, the standard of review for compliance with Fed. Rules Cr. Proc. Rule 11 in informing a defendant of his rights prior to a plea of guilty is plain error. "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11 must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez-Benitez, supra,
___ U.S. at ___, 124 S.Ct. at 2340.
 {¶ 33} Fed. Rules Cr. Proc. Rule 11 is analogous to Ohio Crim. R. 11 and Juv. R. 29. In re: Homan, 5th Dist. No. 2002AP080067, 2003-Ohio-352. The United States Supreme Court further stated that where a defendant does not enter a Rule 11 objection on the record, the defendant has the burden to demonstrate plain error, and an appellate court may look to the entire record when determining whether the appellant's substantial rights have been affected. United States v. Vonn
(2002), 535 U.S. 55, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90.
 {¶ 34} In the instant case, appellant failed to object on the record to the trial court's manner of conducting the adjudicatory hearing.
 {¶ 35} At the outset we note that the so-called substantial compliance test is defined as: "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v.Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476-477. The substantial-compliance test can be applicable to Crim.R. 11(C) or Juv. R. 29 when the trial court failed to comply strictly with the requirements of the rule, but the defendant is not shown to be prejudiced by the omission. See State v.Stewart (1977), 51 Ohio St.2d 86, 92-93, 364 N.E.2d 1163,1166-1167; State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474, 476-477; In re Bowman (Jan. 8, 2001), 5th Dist. No. 2000CA00037.
 {¶ 36} Under the "plain error" standard the court can look to the totality of the circumstances to determine whether the appellant's substantial rights have been affected. United Statesv. Vonn (2002), 535 U.S. 55, 122 S.Ct. 1043, 1046,152 L.Ed.2d 90. It is axiomatic that if an appellant has been "prejudiced by the omission" his "substantial rights have been affected." Accordingly, a variance from the requirements of Crim. R. 11 or Juv. R. 29 is harmless error if it does not affect substantial rights. United States v. Dominguez-Benitez, supra, In re:Smith, 5th Dist. No. 2004-CA-64, 2005-Ohio-1434.
 {¶ 37} Juv.R. 29(B) requires that, at the beginning of an adjudicatory hearing, the juvenile court:
 {¶ 38} (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv.R. 30 where the complaint alleges that a child fifteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;
 {¶ 39} (3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 {¶ 40} (4) Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;
 {¶ 41} (5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent.
 {¶ 42} If a juvenile enters an admission, the juvenile court must further comply with Juv.R. 29(D), which allows the court to refuse to accept an admission and requires the court to determine each of the following:
 {¶ 43} (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 44} (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
 {¶ 45} "In re Gault, (1967), 387 U.S. 1, 87 S.Ct. 1428,18 L.Ed.2d 527, served as a turning point in the juvenile justice system. In Gault, the United States Supreme Court granted juveniles facing possible commitment many of the constitutional rights at the adjudicatory stage enjoyed by their adult counterparts, including ratification of the right to counsel and appointed counsel if indigent. Id. at 41. Under R.C. 2151.352 and Juv.R. 4(A), a juvenile is entitled to representation by counsel at all stages of a delinquency proceeding. In most proceedings, with the permission of the court, a juvenile may waive the right to counsel. Juv.R. 3. However, before permitting a waiver of counsel, the court has a duty to make an inquiry to determine that the relinquishment is of "a fully known right" and is voluntary, knowingly, and intelligently made. Gault,387 U.S. at 42. A voluntary, knowing, and intelligent waiver of the right to counsel must affirmatively appear on the record. In re:Kuchta (Mar. 10, 1999), Medina App. No. 2768-M, unreported, at 5, citing In re: Montgomery (1997), 117 Ohio App.3d 696, 700,691 N.E.2d 349, appeal not allowed (1997), 78 Ohio St.3d 1490,678 N.E.2d 1228". In re Woolridge, 9th Dist. No. 20680, 2002-Ohio-828. This Court has held a juvenile may waive his or her right to counsel, but the trial court must make sufficient inquiry to determine whether the juvenile does so knowingly, intelligently, and voluntarily, Kindred, supra at ¶ 20;Christner, supra at ¶ 20, citations deleted. Some of the factors the court must review are the juvenile's age, emotional stability, mental capacity, and prior criminal experience. Id.
 {¶ 46} While the trial court need not strictly adhere to the procedures set forth in Juv.R. 29(D), it must substantially comply with the provisions. In re J.J., 9th Dist. No. 21386,2004-Ohio-1429, at ¶ 9; In re Stone (April 13, 2005), 5th
Dist. No. 04CA013 at ¶ 16.
 {¶ 47} "[T]he applicable standard for the trial court's acceptance of an admission is substantial compliance with the provisions of Juv.R. 29(D). . . ." In re Christopher R. (1995),101 Ohio App.3d 245, 248, 655 N.E.2d 280 (quoting In re Meyer
(Jan. 15, 1992), Hamilton App. No. C-910292. Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea.In re Palmer (Nov. 21, 1996), Franklin App. No. 96APF03-281 (quoting State v. Nero (1990), 56 Ohio St.3d 106,564 N.E.2d 474). If there is substantial compliance, a court may conclude the plea was voluntary absent a showing of prejudice. In reWest (1998), 128 Ohio App.3d 356, 714 N.E.2d 988. The test for prejudice is whether the plea would have otherwise been made. Inre Dillard, Stark App. No. 2001CA00121, 2001-Ohio-1897 (citingState v. Stewart (1977), 51 Ohio St.2d 86, 364 N.E.2d 1163.
 {¶ 48} Failure of the trial court to substantially comply with the provisions of Juv.R. 29(D) requires reversal, allowing the juvenile to "plead anew." In re Christopher R., supra.
 {¶ 49} In Iowa v. Tovar (2004), 541 U.S. 77, 124 S.Ct. 1379, the United States Supreme Court reviewed warnings which the Iowa Supreme Court had held essential to a "knowing and intelligent" waiver of the Sixth Amendment right to counsel. The specific warnings that the state required were as follows:
 {¶ 50} (1) advise the defendant that "waiving the assistance of counsel in deciding whether to plead guilty [entails] the risk that a viable defense will be overlooked"; and (2) "admonis[h]" the defendant "that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty"Tovar, 541 U.S. at 81, 124 S.Ct. 1379. In rejecting the argument that such warnings were required by the Sixth Amendment, the Supreme Court held that a valid waiver of the Sixth Amendment right to counsel did not require the particular language used by the Iowa courts. Instead, the Supreme Court held that "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea."Id.
 {¶ 51} The Court emphasized that it has never "prescribed any formula or script to be read" when a defendant seeks to proceed pro se. See id. at 88, 124 S.Ct. 1379. The central component for a valid waiver is simply that the defendant "`knows what he is doing and his choice is made with his eyes open.'" Id. at 89,124 S.Ct. 1379 (quoting Adams v. United States ex rel. McCann,317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Such information "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Id. at 88, 124 S.Ct. 1379 (citing Johnson v.Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).
 {¶ 52} The Court in Tovar, cited Patterson v.Illinois (1988), 487 U.S. 285, 108 S.Ct. 2389, as holding that at earlier stages of the criminal process, a less searching or formal colloquy may suffice. Id., at 299, 108 S.Ct. 2389. The Court noted "[w]e require less rigorous warnings pretrial,Patterson explained, not because pretrial proceedings are `less important' than trial, but because, at that stage, `the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial. Id., at 299, 108 S.Ct. 2389 (citation and internal quotation marks omitted)". Tovar, supra, 541 U.S. at 90,124 S.Ct. at 1388. The Court concluded "`[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances — even though the defendant may not know the specific detailed
consequences of invoking it.' United States v. Ruiz,536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original). We similarly observed in Patterson: `If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum.' 487 U.S., at 294,108 S.Ct. 2389 (internal quotation marks omitted)." Tovar, supra,541 U.S. at 92, 124 S.Ct. at 1389. {¶ 53} In the case at bar, this Court finds that the record shows that both appellant's admission to the complaint and his waiver of counsel were made voluntarily, knowingly, and intelligently. The record illustrates that Juv.R. 29 was not violated and that Appellant's constitutional rights were not violated.
 {¶ 54} The transcripts from the hearings reveal that the trial court followed Juv.R. 29. Under Juv.R. 29(B), the trial court informed Appellant of the complaint filed against him and went through each charge, individually, explaining the charge, the elements involved, and the category of the charge. After each charge was explained, the trial court asked Appellant if he understood the charge, and Appellant consistently answered in the affirmative.
 {¶ 55} Pursuant to Juv.R. 29(B)(2) and (D), the trial court informed Appellant of the possible consequences of being found delinquent or admitting to the delinquency charge, which Appellant said he understood. The trial court also informed Appellant that he had the right to a lawyer and that if he could not afford a lawyer, one would be appointed for him if he qualified under the State guidelines. Appellant stated that he understood his right to counsel, and he did not want a lawyer.
 {¶ 56} The trial court's statement "and you qualify under state guidelines . . ." was not a misstatement of the law. Ohio Adm. Code 120-1-03 states: "(D) Juvenile court. In determining eligibility of a child for court-appointed counsel in juvenile court, only the child's income shall initially be considered . . ." In other words the law requires the appointment of counsel if the minor does not independently have the means to hire counsel.
 {¶ 57} The trial court informed Appellant he had the right to remain silent and a right to go to trial to present evidence in his defense. Appellant stated he understood his right to go to trial and present a defense. The trial court explained to Appellant that he had the right to cross-examine witnesses and that the prosecution had the burden to show he committed the crimes by proof beyond a reasonable doubt. Appellant stated that he understood those rights. Appellant state that there had been no promises or threats made to coerce him into pleading to the charges. The court informed appellant that by entering an admission to the charges the court would proceed directly to disposition to determine what punishment or conditions should be imposed upon appellant. Appellant stated that he understood. Appellant stated that he understood what the Department of Youth Services is and that by entering an admission to the charges he could be committed to the custody of the Department of Youth Services "for a minimum period of six months or twelve months and a maximum period not to exceed age twenty-one". (T. at 5). Appellant stated that he understood he could be sentenced to the Department of Youth Services. (Id.)
 {¶ 58} Appellant was days short of his fourteenth birthday at the time he entered his admissions. Appellant has a previous record in the juvenile court. Appellant's mother was present in court during the explanation of rights. She concurred in her son's decision to waive his right to counsel. (T. at 3). She and the appellant were both informed of their right to object to the magistrate's decision pursuant to Juv. R. 40. (See, Right to File Written Objections, Acknowledgement of Receipt, Waiver of Objections, filed August 9, 2005). The appellant and his mother acknowledged receipt of the magistrate's decision and both waived their right to file written objections to that decision. (Id.). Appellant and his mother signed a written waiver of rights form prior to the plea. (T. at 2). A copy of this document is contained within the trial court's file. Appellant fails to explain how he was prejudiced by the court's disposition of the violation for prior court order charge. The court terminated appellant unsuccessfully from probation. Appellant's disposition committing him to DYS was based upon his pleas to the two counts of theft. Appellant has not alleged that he would not have plead "but for" the magistrate's disposition concerning costs, restitution and termination of probation. In re Dillard, Stark App. No. 2001CA00121, 2001-Ohio-1897 (citing State v. Stewart
(1977), 51 Ohio St.2d 86, 364 N.E.2d 1163).
 {¶ 59} The record illustrates that Appellant's admission was voluntary and that the trial court explained his rights, the charges, and the consequences of being found delinquent. Based on the foregoing, this Court finds that the trial court substantially complied with Juv.R. 29 and did not violate Appellant's constitutional rights. The record reflects that appellant's admission to the charges was given knowingly, intelligently, and voluntarily and that the trial court obtained a valid waiver of Appellant's right to counsel.
 {¶ 60} Accordingly, appellant's First and Second Assignments of Error are overruled.
 III. {¶ 61} In his Third Assignment of Error appellant maintains that the trial court erred in suspending appellant's right to obtain a driver license. We agree.
 {¶ 62} R.C. 2152.19, additional dispositional orders fro delinquent children, provides, in relevant part:
 {¶ 63} "(A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition, in addition to any other disposition authorized or required by this chapter:
 {¶ 64} "* * *
 {¶ 65} "(4) Place the child on community control under any sanctions, services, and conditions that the court prescribes. As a condition of community control in every case and in addition to any other condition that it imposes upon the child, the court shall require the child to abide by the law during the period of community control. As referred to in this division, community control includes, but is not limited to, the following sanctions and conditions:
 {¶ 66} "* * *
 {¶ 67} "(l) A suspension of the driver's license, probationary driver's license, or temporary instruction permit issued to the child for a period of time prescribed by the court, or a suspension of the registration of all motor vehicles registered in the name of the child for a period of time prescribed by the court. A child whose license or permit is so suspended is ineligible for issuance of a license or permit during the period of suspension. At the end of the period of suspension, the child shall not be reissued a license or permit until the child has paid any applicable reinstatement fee and complied with all requirements governing license reinstatement".
 {¶ 68} In the case at bar, appellant was not sentenced to community control sanctions. Accordingly, the trial court could not suspend appellant's right to obtain a driver license under R.C. 2152.19(A) (4) (l).
 {¶ 69} R.C. 2152.19 further provides:
 {¶ 70} "(B) If a child is adjudicated a delinquent child, in addition to any order of disposition made under division (A) of this section, the court, in the following situations and for the specified periods of time, shall suspend the child's temporary instruction permit, restricted license, probationary driver's license, or nonresident operating privilege, or suspend the child's ability to obtain such a permit:
 {¶ 71} "(1) If the child is adjudicated a delinquent child for violating section 2923.122 of the Revised Code[illegal conveyance or possession of deadly weapon or dangerous ordinance or illegal possession of object indistinguishable from firearm in a school safety zone], impose a class four suspension of the child's license, permit, or privilege from the range specified in division (A)(4) of section 4510.02 of the Revised Code or deny the child the issuance of a license or permit in accordance with division (F)(1) of section 2923.122 of the Revised Code.
 {¶ 72} "(2) If the child is adjudicated a delinquent child for committing an act that if committed by an adult would be a drug abuse offense or for violating division (B) of section 2917.11[disorderly conduct when intoxicated] of the Revised Code, suspend the child's license, permit, or privilege for a period of time prescribed by the court. The court, in its discretion, may terminate the suspension if the child attends and satisfactorily completes a drug abuse or alcohol abuse education, intervention, or treatment program specified by the court. During the time the child is attending a program described in this division, the court shall retain the child's temporary instruction permit, probationary driver's license, or driver's license, and the court shall return the permit or license if it terminates the suspension as described in this division".
 {¶ 73} Appellant was not convicted of any of the offenses enumerated in R.C. 2151.19(B) (2).
 {¶ 74} The language of R.C. 2152.19(B) is specific: "in addition to any order of disposition made under division (A) of this section, the court, in the following situations and for the specified periods of time, shall suspend the child's temporary instruction permit, restricted license, probationary driver's license, or nonresident operating privilege, or suspend the child's ability to obtain such a permit . . ." This is not, as appellee argues a general "catch-all" provision.
 {¶ 75} The primary purpose of the judiciary in the interpretation or construction of a statue is to give effect to the intention of the legislature, as gathered from the provisions enacted by application of well settled rules of construction or interpretation. Henry v. Central National Bank (1968),16 Ohio St.2d 16, 20. (Quoting State ex rel. Shaker Heights PublicLibrary v. Main (1948), 83 Ohio App. 415). It is a cardinal rule that a court must first look to the language itself to determine the legislative intent. Provident Bank v. Wood (1973),36 Ohio St.2d 101, 105. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretive effort is at an end, and the statute must be applied accordingly. Id. at 1051-06. In determining legislative intent it is the duty of the court to give effect to the words used, not to delete words used or to insert words not used.Columbus-Suburban Coach Lines v. Public Utility Comm. (1969),20 Ohio St.2d 125, 127. R.C. 1.42 states: "1.42 Common and technical usage. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."
 {¶ 76} As noted above, the legislature granted the juvenile courts the right to suspend a driver license or ability to obtain a driver license in specific situations and for the specified periods of time. Appellant was not granted community control sanctions nor was he convicted of an enumerated offense. Accordingly, the trial court was without authority to prospectively suspend appellant's ability to obtain a driver license.
 {¶ 77} Appellant's Third Assignment of Error is sustained. This court vacates the trial court's restriction on appellant's future right to obtain a driver license.
 IV. {¶ 78} In his Fourth Assignment of Error appellant maintains the trial court erred in not considering community service in lieu of financial sanctions.
 {¶ 79} R.C. 2152.20 governs fines and costs in juvenile court. In parts relevant to this appeal the statute provides: "(A) If a child is adjudicated a delinquent child or a juvenile traffic offender, the court may order any of the following dispositions, in addition to any other disposition authorized or required by this chapter:
 {¶ 80} "(2) Require the child to pay costs . . .
 {¶ 81} "(3) Unless the child's delinquent act or juvenile traffic offense would be a minor misdemeanor if committed by an adult or could be disposed of by the juvenile traffic violations bureau serving the court under Traffic Rule 13.1 if the court has established a juvenile traffic violations bureau, require the child to make restitution to the victim of the child's delinquent act or juvenile traffic offense or, if the victim is deceased, to a survivor of the victim in an amount based upon the victim's economic loss caused by or related to the delinquent act or juvenile traffic offense. The court may not require a child to make restitution pursuant to this division if the child's delinquent act or juvenile traffic offense would be a minor misdemeanor if committed by an adult or could be disposed of by the juvenile traffic violations bureau serving the court under Traffic Rule 13.1 if the court has established a juvenile traffic violations bureau. If the court requires restitution under this division, the restitution shall be made directly to the victim in open court or to the probation department that serves the jurisdiction or the clerk of courts on behalf of the victim.
 {¶ 82} "(C) The court may hold a hearing if necessary to determine whether a child is able to pay a sanction under this section.
 {¶ 83} "(D) If a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service under division (A) of section 2152.19 of the Revised Code in lieu of imposing a financial sanction under this section. If a child who is adjudicated a delinquent child is not indigent, the court may impose a term of community service under that division in lieu of, or in addition to, imposing a financial sanction under this section. The court may order community service for an act that if committed by an adult would be a minor misdemeanor."
 {¶ 84} In In re: McClanahan, 5th Dist. No. 2004AP010004, 2004-Ohio-4113 this court held "R.C. 2152.20 does not expressly forbid the trial court from imposing a financial sanction in a case involving an indigent juvenile. The use of the word "may" in R.C. 2152.20(C) clearly give the trial court discretion to hold a hearing". Id. at ¶ 18.
 {¶ 85} Accordingly, the trial court is not mandated to hold a hearing before it may impose financial sanctions against an indigent juvenile. Nor does the statute mandate that the court impose community control sanctions upon an indigent juvenile; rather the statutes direct the court to "consider" imposing a community control sanction. In contrast to R.C. 2152.20(C), the language of R.C. 2152.20(D) does impose a requirement upon the trial court, obliging it to consider community service in lieu of sanctions when the child being sentenced is indigent. In re:C.P., 9th Dist. No. 04CA008535, 2005-Ohio-1819 at ¶ 15.
 {¶ 86} As previously indicated, appellant and his mother both signed a written waiver of their right to object to the decision of the magistrate. Appellant does not challenge that waiver in the instant appeal.
 {¶ 87} Under Juv. R. 40(E) (3) (a), a party must file written objections to a magistrate's decision within fourteen days. Furthermore, Juv. R. 40(E) (3) (b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 88} Absent objections to a magistrate's decision, a juvenile waives his or her ability to raise assignments of error related to that decision. "The waiver under Juv. R. 40(E) (3) (b) embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." In re: Etter
(1998), 134 Ohio App.3d 484, 492, 731 N.E.2d 694.
 {¶ 89} While Juv. R. 40(E)(4)(a) also provides that the trial court must undertake an independent examination of the magistrate's decision, even if no objections are filed, such analysis is limited to errors of law or other defects on the face of the magistrate's decision. In re: Bradford, 10th Dist. No. 01AP-1151, 2002-Ohio-4013 at ¶ 47.
 {¶ 90} Recently the Ohio Supreme Court addressed the issue of assessing court cost against an indigent defendant in a criminal case. In State v. Threatt, 108 Ohio St.3d 277, 2006-Ohio-905, the Court held "[c]osts are assessed at sentencing and must be included in the sentencing entry. R.C. 2947.23. Therefore, an indigent defendant must move a trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is waived and costs are res judicata". Id. at ¶ 23.
 {¶ 91} Ordinarily we would find that appellant waived the issue of imposing community control sanctions in lieu of financial sanctions by failing to either move the court at the time of sentencing or objecting to the magistrate's decision. However, under the facts of this case we are unwilling to conclude that the appellant waived his objection to payment of costs and restitution. Specifically, the magistrate did not inform the appellant that he could be ordered to pay court costs and restitution. While we have found that Juv. R. 29 was not violated and that Appellant's constitutional rights were not violated we cannot say that appellant had an opportunity to move the court to impose community control sanctions in lieu of costs and restitution. Further the record before us does not reflect that either the magistrate or the judge considered community service in lieu of sanctions as mandated by R.C. 2152.20(D).
 {¶ 92} Accordingly appellant's Third Assignment of Error is sustained insofar as the trial court's orders concerning the payment of court costs and restitution are reversed. The case is remanded to the trial court for compliance with R.C. 2152.20(D). The court may hold a hearing if necessary to determine whether appellant is able to pay a sanction under this section pursuant to R.C. 2152.20(C).
 {¶ 93} For the foregoing reasons, the judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part and this case is remanded to the trial court for further proceedings consistent with this Opinion.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed in part and vacated in part and this case is remanded to the trial court for further proceedings consistent with this Opinion. Costs to be equally divided between appellant and appellee.