# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1659

_____

United States of America,                    *
                                             *
                    Appellee,                *
                                             *    Appeal from the United States
        v.                                   *    District Court for the
                                             *    Western District of Missouri.
Brian D. Gnavi,                              *
                                             *
                    Appellant.               *

_____

Submitted:  October 20, 2006
Filed:  January 24, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Following Brian Gnavi's plea of guilty to attempting to receive child pornography mailed in interstate commerce, a violation of 18 U.S.C. § 2252(a)(2), the district court[1] sentenced him to 120 months' imprisonment and a life term of supervised release. Gnavi appeals, arguing that his sentence is unreasonable. We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

# I.

In October 2003, the Blue Springs Missouri Police Department informed the United States Postal Inspection Service ("USPIS") that Gnavi was the subject of numerous citizen complaints spanning a six-year period. These complaints alleged that Gnavi had followed school buses, had waited around school bus stops, and had followed a female jogger. On the basis of this information, described in greater detail below, USPIS determined that Gnavi would be a suitable subject for an undercover program targeting individuals who have exhibited a sexual interest in children.

In December 2003, Postal Inspector Donna Osborne, adopting the alias JD Roget, sent Gnavi a letter informing him that she was interested in trading or selling child pornography. Osborne offered to send Gnavi a catalogue of videos and cautioned Gnavi that because the material was illegal, Gnavi should be discreet. Gnavi replied to the letter, stating, "I was curious if with your video list you could maybe send any sample videos/or pics? Anything would be appreciated."

In January 2004, Osborne sent Gnavi a letter reiterating the illegal and sexual nature of the videos. Accompanying this letter was a list of eleven child pornographic videos, which included short, sexually explicit descriptions of their contents. Osborne later sent out another letter, informing Gnavi that she would not send Gnavi a free sample because she had "been burned too many times." (Plea Agreement 4). Gnavi responded, stating "[s]urley [sic] you could still send a still phot [sic] or something so I could safely purchase these videos w/o worrying I'm set up. Please do this as I am interested in these videos D-8, D-6, A16, A19, A23, S12, & S20."

In December 2004, Osborne informed Gnavi that she would be sending him a tape "with a few minutes from 3 of the videos you chose." On December 24, 2004, a controlled delivery of a tape containing child pornographic material was made to Gnavi's home. After Gnavi's father signed for the delivery, postal inspectors

executed an anticipatory search warrant for the home. The inspectors found in Gnavi's bedroom a pornographic magazine entitled Barely Legal, in which Gnavi had concealed the last three letters sent by Osborne. Gnavi's dresser drawers contained numerous pictures from magazines, catalogs and newspapers, the majority which depicted minor females in underwear and swimsuits. Also found in Gnavi's bedroom were 175 videotapes, six of which were reviewed at the scene and were found to contain television footage relating to young girls, including footage pertaining to little girls' beauty pageants and dance recitals. Gnavi was present during the viewing of these videotapes and explained that he used the videotapes and the pictures in his dresser drawers as pornography. He also admitted to following minor females and watching minors at the school and public pool. He denied having had any sexual contact with minors and said that he had never solicited or enticed a child for sex.

The presentence report reflects numerous complaints about Gnavi, including the following. In March 2005, a citizen filed a complaint with the police, stating that he had noticed a black Nissan truck parked at a school bus stop. When the citizen approached the truck (which was registered to Gnavi), it took off at a high rate of speed. An officer later described the vehicle to area children. Several children told the officer that the operator of the truck drove up to them, unrolled his window, and attempted to talk to them. One month later, a school resource officer received a complaint that a black Nissan truck had been following a sixteen-year-old girl while she was jogging, stopping its pursuit only when the girl started walking alongside two people that she did not know. Later, as she was approaching her home, the girl saw the black truck waiting in her neighborhood, whereupon she began running through yards and jumping over fences until she could return home. Gnavi was later identified as the driver. The presentence report also describes various other complaints, from

1999 to 2002, most of which involve reports that Gnavi had followed school buses or young females.[2]

The presentence report also describes pending stalking charges. In April 2005, Gnavi allegedly attempted to entice a 14-year-old girl into his truck. He told her that he wanted help looking for his dog and offered to get her drunk afterwards. He had been stalking the girl for three years. When he was arrested, Gnavi acted in a belligerent manner and struck an officer with his elbow, an action resulting in a charge of resisting arrest.

The presentence report calculated a total offense level of 27 and criminal history category of III, which resulted in a guidelines range of 87 to 108 months. The offense level determination was based, in part, on U.S.S.G. § 2G2.2(b)(7)(C), which applies a four-level enhancement for offenses that involve at least 300, but fewer than 600 images. The probation officer appears to have reasoned that Gnavi's offense involved between 300 and 600 images because he had attempted to receive seven videos, which are considered under the relevant Application Note to have 75 images each. See Application Note 4 to U.S.S.G. § 2G2.2(b)(7)(C). The criminal history category calculation included one point for a municipal conviction for failing to yield to an emergency vehicle. The criminal history calculation also reflected two points which were added because Gnavi was on probation for the municipal conviction when he committed the instant offense.

---

[2]One serious complaint that did not involve a minor female took place in 1998. Gnavi allegedly attacked a pregnant woman at a car wash. He reportedly reached under her skirt, exposed himself, and demanded that the woman perform oral sex on him. When she refused, he forced her onto the front seat of her car and attempted to remove her clothing before she escaped. The case was dismissed because the victim, apparently seeking to avoid additional trauma during her pregnancy, refused to cooperate. She later agreed to testify, but the statute of limitations had expired.

At sentencing, Gnavi contested both the offense level and the criminal history category assessed in the presentence report. With regard to the offense level, Gnavi argued that because he did not attempt to obtain the seven videos, the four-level enhancement was improper. He also contended that assessing a criminal history point for his municipal conviction and two additional points because he had been on probation for this conviction at the time of his child pornography offense was inappropriate. The district court sustained both of Gnavi's objections and determined that his total offense level was a 23 and his criminal history category was a II, resulting in an advisory guideline range of 63 to 78 months.

Having calculated a guidelines range of 63 to 78 months, the district court imposed a sentence of 120 months. The district court, recognizing that this sentence was "substantially" above the guidelines range, stated that this variance was imposed out of concern for public safety. The court noted that Gnavi was different from other defendants because he had gone beyond the consumption of child pornography and had been "acting out in the community towards children." (Sent. Tr. 35).

## II.

On appeal, Gnavi claims that his 120 month sentence represents an unreasonable upward variance from the top of the applicable guidelines range of 63 to 78 months.

Before discussing the variance, we first address the government's argument that the district court's calculation of the advisory range was too low and that Gnavi's sentence therefore represents only a modest variance from the correct guidelines range.[3]

_____

[3]Gnavi claims that the government is precluded from contesting the district court's guidelines calculation because the government did not file a cross-appeal. We

The government contends first that Gnavi attempted to receive seven videos and thus should have been assessed a four-level enhancement. The government argues that Gnavi attempted to receive 525 images because he expressed interest in seven videos in his November letter. What Gnavi was asking for in that letter, however, was a "still phot [sic] or something." His expression of interest in the videos did not rise to the level of an attempt to obtain them. Cf. United States v. Brown, 862 F.2d 1033, 1038 (3d Cir. 1988) (recognizing that a letter in which a defendant states that he is interested in three child pornographic videos "might be considered an inquiry rather than an order"). Gnavi did, however, request "sample videos/or pics" in December 2003. This request, coupled with his November 2004 letter, supports the conclusion that he attempted to receive a sample video. A two-level enhancement for 75 images was therefore appropriate.

The government also argues that Gnavi should have been assessed three criminal history points for his conviction for failure to yield to an emergency vehicle. The government appears to reason that because the emergency vehicle in question was a police vehicle, Gnavi's conviction falls under the auspices of U.S.S.G. § 4A1.2(c)(1). Pursuant to 4A1.2(c)(1), a conviction for a crime resembling failure to obey a police officer will be counted for criminal history purposes if the conviction results in a term of probation of at least one year (as was the case here). This particular conviction, however, is more analogous to a minor traffic infraction, a crime that falls under the heading of 4A1.2(c)(2) and which garners no criminal history points. The gravamen of the offense for which Gnavi was convicted is the obstruction

---

disagree. The government is defending rather than challenging the sentence imposed by the district court and, in so doing, is not bound by the district court's reasoning or its calculations. See United States v. Hill, 42 F.3d 914, 917 n.8 (5th Cir. 1995) (noting that although the government did not file a cross-appeal, it could contest a sentencing determination made by the district court because "[t]he Government is not seeking to enlarge Hill's sentence, or to otherwise alter the judgment; instead, it proffers an alternative legal theory upon which the district court's imposition of a consecutive sentence may be upheld").

of emergency vehicles and not the flouting of a police officer's lawful authority. After all, Gnavi would have been just as guilty of failure to yield if the vehicle in question had been a fire truck or an ambulance; the fact that a police officer was operating the vehicle was incidental to the crime.[4] Because Gnavi's offense was more akin to a traffic infraction, we believe that the district court properly declined to assess criminal history points for Gnavi's municipal conviction.

We turn next to the variance imposed by the district court. We review the reasonableness of the sentence imposed for abuse of discretion. United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005). A sentence within the guideline range is presumed to be reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). Sentences deviating from the guideline range can be reasonable so long as the sentencing judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a). United States v. Claiborne, 439 F.3d 479, 481 (8th Cir. 2006), cert. granted, 127 S. Ct. 551 (2006). A sentence outside the guideline range may be inappropriate if the sentencing judge "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment by arriving at a sentence outside the limited range of choice dictated by the facts of the case." United States v. Likens, 464 F.3d 823, 825 (8th Cir. 2006) (citing Haack, 403 F.3d at 1004). The further the district court varies from the presumptively reasonable guideline range, the more compelling the justifications based on the § 3553(a) factors must be. United States v. McMannus, 436 F.3d 871, 874 (8th Cir. 2006).

---

[4]We also note that it is not clear that Gnavi's offense involved disobedience to an officer's order. The presentence report states that Gnavi "failed to stop his vehicle at a reasonable distance after the Blue Springs, Missouri, police officer activated the emergency equipment on the police vehicle." (P.S.R. 13). It is not specified whether Gnavi failed to yield entirely or yielded at an unreasonable distance. If Gnavi yielded at an unreasonable distance, one could well conclude that Gnavi did obey the officer's instruction, albeit imperfectly.

As the district court recognized, the 54 percent upward variance from the top of the applicable guideline range is significant.  In light of the record, however, we do not believe that the district court exceeded the proper limits of its discretion in imposing a sentence of 120 months.  The imposition of this variance was motivated primarily by the need to protect the public, a sentencing factor specified by § 3553(a)(2)(C).[5]  Gnavi, as the district court observed, was not a simple consumer of child pornography — he was an individual who "[has] been acting out in the community towards children."  (Sent Tr. at 35).  This conclusion is sufficiently justified by Gnavi's lengthy and troubling record of stalking and preying upon minors.  Accordingly, we conclude that the district court's concern for public safety was well founded.

Gnavi contends that the district court placed undue weight on the need to protect the public and did not take other factors into sufficient consideration, such as the need to avoid unwarranted sentencing disparities and Gnavi's significant work history.  We disagree.  First, although the district court did not expressly state that it was considering the need to prevent unwarranted sentencing disparities, the district court made it clear that Gnavi's predatory behavior differentiated him from other defendants.  This is an implicit recognition of the need to avoid unwarranted sentencing disparities.  Second, although factors mentioned at sentencing such as Gnavi's employment history and his desire to obtain his G.E.D. are relevant to sentencing determinations, we do not believe they undermine the reasonableness of the district court's sentence in this case.  Finally, we are unpersuaded by Gnavi's attempt to minimize the seriousness of his conduct toward children. Gnavi points out that, apart from his pending stalking charges, his actions towards minors had not resulted in arrests.  He notes also that the stalking charges are misdemeanor offenses. Whatever Gnavi's record lacks in criminal penalties, however, it makes up for in

---

[5]In its amended statement of reasons, the district court also noted Gnavi's need for extensive psychological counseling.

length and duration, for it reflects a number of complaints and incidents spanning a six-year period. In light of this disturbing record, we cannot conclude that the district court's reliance on the need to protect the public was an abuse of discretion.

Gnavi also contends that the district court failed to provide an adequate statement of its consideration of the § 3553(a) factors. Although a district court is required to consider each of the § 3553(a) factors, it need not "categorically rehearse" each of these factors as long as it is clear that they were considered. United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006). Here, the district court stated that "I haven't walked through all of the 3553 factors, but I have taken all those things into account." (Sent. Tr. at 36). Thus, although the district court did not discuss each of the factors explicitly, we are satisfied that, as the district court itself acknowledged, it took them into account.

The judgment is affirmed.

_____